We'll hear argument now in number 21-2078, Cofund II v. Hitachi. Mr. Insua, take a moment, however you pronounce it, please come forward and we'll start. Take a moment when you're ready. Thank you. Cofund II v. Hitachi Capital Good morning, Your Honors. May it please the Court, Nicholas Insua, for the Appellant Defendant, Hitachi Capital America Corp., from the law firm Reed Smith. I would like to reserve three minutes for rebuttal. Please do. Thank you. This is, in some ways, a fairly standard breach of contract case between private parties. It's a contract governed by Michigan law. In some ways, not super exceptional. What makes this exceptional, I would submit, is that there are so many number of errors in the case, and the errors do not build on or depend on each other in any way. There are a series of independent, we believe, reversible. Yes, Your Honor. There's just a jurisdictional issue or two I'd like to just touch on before that. Is there exclusive bankruptcy jurisdiction over this dispute? So, as you saw in our papers, we moved to dismiss or stay this case in favor of a bankruptcy proceeding that was pending in the District of Maryland. Right, but you can do that where it's exclusive or where it's non-exclusive. This is a core or a non-core matter. I think it's probably non-core, but it certainly does very much overlap with the dispute that took place. That's not going to do it, counsel. I mean, if it's a non-core matter, then I don't understand the basis of your jurisdictional claim. Your motion to dismiss has to be that this is a core matter, right? It can't be. It's either implicated the mandatory jurisdiction of the bankruptcy court, in which case it was improper to be before the district court, or it's not, in which case maybe there were comedy issues or discretionary issues. So, is that your argument, that this might have been better heard in the bankruptcy court, but it didn't need to be? So, I do think that it needed to be heard in the bankruptcy case because there was so much of an overlap of the issues, both substantively and I'm going to use the word atmospherically. The bankruptcy case was filed March 24th of 2016. We're almost on the six-year anniversary of that. This case was filed just one week later in the district court. I get that we have March 24th, we have March 28th, we have a lot of events here, but I think when you say that it has to be in the exclusive jurisdiction of the bankruptcy court, we need something really, really, really close to chapter and verse for why that happens. You've got non-core. Those aren't in the exclusive jurisdiction. If I understand bankruptcy court core proceedings, not all of those are in the exclusive jurisdiction. And so we really need kind of, you know, as close to a pin site as you can provide for why these events that you describe take us into one of the exclusive jurisdiction provisions of the bankruptcy court because there's a lot of them and there's a lot of code there. And I'd just like to know, what are you hanging your hat on? I do not have a pin site to provide to the court. I would be happy to provide one. A pin site to the code, not a pin site to a court ruling or opinion. But nothing in the code that you can say it's this subsection? Nothing that I can provide. Was co-funds participation with Forrest a disguised loan? We believe it was. Although it was described as participation where there was an ownership interest, we do believe that they were essentially loans and Entachi was also a lender. What's your best evidence for that? What's your best evidence for not characterizing the transaction the way that it appears on its face as an ownership interest? The way that the transaction worked and that co-fund made these essentially loans to Forrest as Forrest went along and then Entachi came on as the next lender after a prior bank had been in that position. The way that the transaction functioned, as best as we can tell. What should we look at in the record that would support that argument? I would say looking at the master participation agreement, the intercreditor agreement, as well as how some of the But those say that they bought a participation interest and the participation interest entitled them to a pro rata share of the returns from the factored entities. That feels like an equity interest. That doesn't feel like a debt interest. As far as the transactions occurred, the money was put in. There was never any return of the money. The money co-fund never asked for money back. They agreed. Again, that begins to feel like an equity interest when you say, maybe I'll get money back, maybe I won't. I just want what you factored to come back to me under these really, really, really favorable terms where the interest rate's really, really high and I'd really like to get a piece of that and I'd like to buy in to the arrangements that you made to give people really high interest rates to buy their account for receivable. I'd like in on that. You won't let me in all the way. You capped me at 50 percent. Fine. But I want in on as much of that as I can. And now you're saying that's a loan? To us, as we looked at this, the way it functioned seemed more like a loan. I mean, was there an interest rate that had to be paid back in return for buying these participation shares? That's what a loan looks like to me. A loan looks like, okay, we'll pay you back under these terms, under this interest rate. It could be balloon. It could be installment. The interest rate could be accrued at different rates. Was there anything like that in this arrangement? No, only the co-fund had the ability to get money back and it never asked for any money back. I don't know if my colleagues want to talk more about jurisdiction. Sure. But I'd like to know a little bit about the expert testimony. What's your best argument that you preserved a Rule 702 objection to Cohen's qualifications? And then separately, what's the best argument that you preserved a Rule 702 objection to the reliability of expert testimony under Rule 702, Dauber? Because there was a mention of 702 before trial, but there wasn't a lot of discussion in the record. Sure. So, Your Honor, the 702 was raised in the joint pretrial order. Also, during Mr. Cohen's testimony, when he first came in to give testimony, I raised an objection to his qualifications as an expert. I raised the objection to the district judge. I then said I can get into this more on my cross-examination. At the beginning of my cross-examination, I've laudered Mr. Cohen about his qualifications and background in forensic accounting, including introducing some deposition testimony that I'd taken on forensic accounting and his views on forensic accounting. Okay. Remind me of the record citation that we should look at for that. Sure. That is. So the examination of Mr. Cohen was at appendix pages 553 to 554, I believe. And this was raised below in the court at – in our findings of fact and conclusion of law, which were not put completely in the appendix, but they were available to court. That's docket number 139 at pages 26 to 28. All right. So let's – if we say that you preserved an objection to qualifications, is that enough to preserve an objection to the reliability of his expert testimony under Daubert? You never mentioned Daubert. So we did mention Daubert in our findings of fact and conclusion of law. And we did make reference when we objected to his general qualifications to provide expert testimony. But I think what Judge Bibas is getting at is that 702 has kind of two components to it for who – for expert testimony. One is who. Does this person have the knowledge, skill, training, experience, education to be an expert? That's one of them. And then the other one is what Daubert's about, which is are they going to testify to the product of reliable methodologies? And so I think what Judge Bibas is asking is where did you ever put anything in on this second one? And then I think the other question that I have is isn't the first one already addressed by the district court and reviewed for abuse of discretion or minimum clear error? So to take the – I guess the first part of that question first. I did question Mr. Cohen about the – whether what he was testifying about was part of a generally accepted methodology. And I can't remember if I asked about accounting or forensic accounting. So I did bring that issue to bear with Mr. Cohen and before the district court. And we did then raise those issues in our briefing to the district judge. I mean, is there any issue that testifying to generally accepted accounting principles is not a reliable methodology? Well, he did not testify that what he – he did not testify that what he was part of a generally accepted methodology. He was just giving his view of looking at documents. And so I guess the question is there's a lot of different ways to get to say that an expert is not qualified. Lawyers get paid a lot of money to find that any flaw they can with an expert's qualifications or the reliability of their methodology. I mean, I guess we'll just wait for the specific pin site to evaluate what precise challenge you made. I'll tell you right now, my concern is that making one of those multitude of arguments doesn't preserve all sorts of arguments just because you say it was a 702 challenge or it was a Daubert challenge. That's a family of arguments. And I'm worried that you might have raised some, but now you want other – there's other family issues. So I think it's in our papers we've raised that he's not as certified in forensic accounting. He testified that it wasn't part of the generally accepted methodology or practice. He has never, you know, he never published, never had given prior expert opinion testimony. And I think importantly that what he did was look at documents he got after the fact, not documents that were in his contemporaneous possession, in his position as essentially the CFO of co-fund, which he could then talk about what should have been in the co-fund prior to the collateral or not. But he looked at documents he got after the fact during the case and then testified about those, actually created demonstrative exhibits. I believe P67 is one of them, which is featured in his testimony in the view of having, you know, looked at the documents after the fact and then giving an opinion about what he thinks the damages should have been. If you don't have anything else, we'll save the rest of your time for rebuttal, so five and a half minutes. Do you want to add anything further? If the panel has no other questions, I don't know that I have anything I need to add at this point, and I'll just reserve the rest. Thank you. Good morning, Your Honors. May it please the Court. Richard Zucker from the firm of Lasser-Hochman, LLC, attorneys for the Plaintiff-Appellee Co-Fund II, LLC. I'd like to focus my presentation on the, what I've called the, or what Your Honors called the 702 Dauber argument. I do want to hear you discuss the jurisdiction and the loan ownership points, if you could. If you prefer to go into 702, that's fine. I'll address Your Honors' concern. As we emphasized in our brief, the transaction between Co-Fund and Forrest Capital was not a loan. The master participation agreement is clear that it was a participation agreement. It was a purchase and a sale. It wasn't a buyer, it wasn't a debtor-creditor relationship. So why then was a UCC statement filed? To give notice to all parties of the existence of the relationship. A UCC does not have to be filed in a case that doesn't, let me say it differently. A UCC is not always evidence of a debtor-creditor relationship. Commonly, certainly it is, and that's only been my experience. But just because a UCC is filed does not mean that there is a debtor- Because in order for there to be a debtor-creditor relationship, there first has to be, I think, a security interest. Clearly. And then if you don't, now some people file a UCC before they have the security interest, and that's its own trouble, right? And so what you're saying, though, is this is the inverse of that. There was no security interest, but a UCC was filed. Correct. And so you aren't saying that, and so you're saying that the filing of the UCC shouldn't, although it most commonly would suggest that there is a debtor-creditor relationship, it can be filed for other purposes, and that in this instance it was filed for another purpose, which was just basically a broad notice sort of purpose. That is correct, number one. And number two, it's not an issue that was the subject of the appeal that was made. And number three, if you look at the description of the collateral, the description of the collateral does not say, as UCCs, as financing statements normally do, for instance, all assets of the debtor. That's not what this particular one said, and I don't have it in front of me. In terms of title, maybe, or proceeds? It tracked the language in the master participation agreement. Okay. You can proceed. So in terms of the 702 argument, and at least the argument that was made by the appellant Hitachi in this matter, they focused really on the And qualification of a witness to testify at trial as an expert has nothing whatsoever to do with Rule 26A2, which is a disclosure discovery requirement. And yet throughout the trial and throughout the post-trial submissions and in the appellate brief by Hitachi, all they talked about was 26A2. And the distinction between 26A2B and 26A2C. And that was the sole basis that Mr. Kahn was an unqualified expert. And clearly he was a qualified expert. And if you look at 702, the first phrase in 702 talks about if a witness is If he's qualified, then they have the four other elements in 702. Where in the record did the district court do the analysis that he was qualified? Well, I don't know. The answer to that question is there was no formal statement by Judge Weekington in her opinion. What she did in her opinion, and I think she mentioned, I don't know if it in the May opinion, that she made reference to Mr. Kahn being a certified public accountant. But she heard his testimony and she analyzed it. There was no formal 702 analysis. And I don't think that in this particular case there needed to be. This was a simple, straightforward breach of contract case. Also, a lot of times when you do a 702 analysis, someone bought you as the judge will not give an opinion or do anything else. They'll just say, I hereby certify the expert. Right? That's in a jury case. Right. This was in a jury case. No question. So the most that's missing here is a statement by the judge before she heard the evidence that she was going to make the findings of fact and conclusions of law on that she said, I certify the witness. And so if there's a 702 deficiency in what the district court did, it was that she did not make an express statement saying, I certify the witness as an expert. I would agree. Even if such an express certification is required. Sorry. That didn't finish your sentence. So according to Hitachi, Dan Cohn was an unqualified expert for one reason and only one reason. And that was that Cofund presented him as a witness who was required by 26A to B to provide a written report that must contain the six items, the six disclosure items in that discovery rule. That was one reason. And Mr. Cohn did not provide such a written report in compliance with those six requirements. However, as Cofund established and set forth in his trial brief at trial and his post-trial submission, Mr. Cohn was not required to provide such a written report because he was not retained or specially employed to provide expert testimony in the case. And he was not one whose duties as Cofund's employee regularly involved giving expert testimony. Well, the problem we have here is that some of what he was saying was as a lay or fact witness, and then some of what he was saying was as analyzing. So there may have been a blend of what he was doing here. So, you know, ordinarily bringing in an outside person just to be an expert witness, but he's in the position of I'm an accountant, I have some factual knowledge here, but then there's some other things where I'm. And he's clearly taking records, business records in the ordinary course of business of Cofund, of Hitachi especially, and Forrest Capital, and looking at them and examining them and drawing conclusions from those. And that's what an expert does, especially in a case such as this. What I understand happens is if you have an expert who's kind of an in-house expert and is exempt from the expert report requirement, usually what opposing counsel does is they say, oh, we have other discovery tools. We have interrogatories. We have requests for admission. We have all these other things. And so we would like to propound those. We can take depositions of the expert. We can do all these other things. So, I mean, at one level the notion that he could be a dual fact witness and treating physicians, that happens in a lot of other contexts. For sure. And so at the end of the day, I mean, what exactly, if the district court did make an error here and no report, and a report should have been submitted, I mean, is this a redo? Or is this harmless? Or where does this take us? So I — Work with me on the if. If the report should have been. That might be hard for you, but I know you've got good arguments that it should have been. It's pretty clear that it is clear that he was not required under 26A2B to file a report. Because if the witness is one who was retained or specially employed to provide expert testimony in the case, that was not Mr. Cohn, nor was Mr. Cohn one whose duties as the party's employee regularly involved giving expert testimony. He fit neither of those in those cubbyholes. Therefore, he was not required to give a report. All that he was required to do, or all that co-fund was required to do, and it did it, was if the witness is not required to provide a written report, and I'm reading from 26A2C, the disclosure, there's a disclosure by co-fund must state, number one, the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify. Co-fund did that. Now, interestingly, when you look at, and if we look at the history, perhaps, just some of the documents, we start with the pretrial order, because in your Honor's letter of requesting a two-page response to this argument, you cited paragraph 6A of the October 19 pretrial order, and let's look at exactly what that says. The first sentence says, Hitachi objects to Dan Cohn offering testimony under Federal Rule of Evidence 702, 703, and or 705. So it says, but the objection then continues, and it says, according to Hitachi, Mr. Cohn does not qualify as an expert and was given a record about the untimely disclosure, and I don't think that that was, there was just no evidence of that. But there was no specific mention of any of the four subparts of 702. All they talk about there is the word qualify, and again, qualification is in the preamble, if you will, to Rule 702. All right, but I guess the most favorable spin on their argument would be qualifications are, they're bound up with, are you qualified in using a method that is reliable and generally accepted? So is that, isn't that enough to preserve it and bring it in? Can we really separate the qualifications from Daubert? Well, the question, I think the answer to that question is yes, and the qualification, again, because he was accepted, his testimony was accepted by Judge Wiginton, the standard, as your Honors know, is that he is qualified in using a method that is abuse of discretion. Did she abuse her discretion, even though there may have been no express statement qualifying him as an expert witness? It was, as we know, it was a non-jury case. She deferred, as I think properly so, to admitting the evidence, at least initially, and then after hearing all of the evidence and he was qualified. And if you look at what she said in her initial opinion from February of 2021, when she talked about the qualification, correct, she did not talk about 702. Why? Because Hitachi never raised that issue. Yes, there was, I think maybe a page and a half in their proposed findings of fact about 702, but when they then got into the detail of applying that to the case, they went back to the discovery rule in 26. She said, well, he wasn't qualified because he hadn't testified as an expert witness in any case. He hadn't authored any documents and so forth and so on. And what the judge relied upon in determining her qualification of Mr. Cohn was a particular case. Can I just interrupt, because I see your time is near the close, and I still have two questions on the exclusive jurisdiction of bankruptcy court. Okay. My first question is, if there is, I'm sorry for interrupting, but if there is no security interest, if it's an open case, ownership interest, if the master participation agreement creates just an ownership interest, not a security interest, is there any way in the world that that could be subject to the exclusive jurisdiction of the bankruptcy court? I don't believe so. So the only way that we could even be getting into the exclusive jurisdiction of bankruptcy court is if there was a security interest, and then we're into some sort of game of trying to find out what liens the estate may have or something like that. So I guess what I'm saying is before you could lose on the exclusive jurisdiction of the bankruptcy court ground, there would first have to be a factual finding that this wasn't an ownership but a disguised loan or a security interest case. Am I understanding that kind of sequencing of arguments correctly? And then you've already answered why you don't think it's a security interest disguised loan. The only interest, the only issue raised by Hitachi on this appeal, Your Honor, has to do with the first filed rule. And what they refer to is the fact that in, I think it was March 24th, there was a filing of an involuntary petition in bankruptcy. Now that did not even create at that point, yes, the bankruptcy court had something to decide, but the actual order for relief was not entered until May of that year of 2016. And by then, of course, COFUND had already initiated this particular action in the United States District Court for New Jersey. As was pointed out when questioning, when you questioned Mr. Nsua, it was a non-core proceeding. I mean, this would have been, if you will, a non-core proceeding. It was an issue between potentially, if you will, not potentially, it was an issue between Hitachi, who was clearly a creditor of Forrest Capital, no question about that. It was a dispute between them, Hitachi, and COFUND, who we say was not a creditor. So I guess the strongest argument I can make on that is the sum of money in Hitachi's blocked account, what if some of that, an indeterminate amount of that, was actually COFUND's money? It was. Not COFUND's, I'm sorry, Forrest's money. And if some of that was Forrest's money, then doesn't that put us into a strange place where the adjudication of whether that's Forrest's money should have been part of the bankruptcy proceeding? A lot of ifs there, Judge. I don't have an answer for that. Mr. Combs' testimony, though, when he dealt with the monies in that blocked account, were that Hitachi took all of the money that was in that blocked account. And that they took it, and that COFUND had a right to a good chunk of that. The question is, did Forrest have any rights or interest in any of that money that would have been necessary to adjudicate as core exclusive jurisdiction in the bankruptcy? That's the strongest I can do for your friend. Well, certainly then, in the Forrest capital bankruptcy, although it was filed as an involuntary, it was an involuntary seven. It was then an order for relief was entered, and I think a couple days later it was converted from a seven to an 11. But that would have been an issue for Forrest capital as a debtor in possession to collect its assets, if they truly felt and thought that some of that money, and they perhaps, Forrest capital, or as DIP, may have had a claim against Hitachi's assets. By reason of it glomming, if you will, all of that money. That claim was never asserted. In fact, it just wasn't asserted by the debtor in possession, and in fact, what happened, as we know from the record, when the adversary proceeding was started, when there was a question about who was entitled to the assets that went into the bankruptcy estate, we know that co-fund received $625,000 approximately. Hitachi also received, as I believe it was, $260,000. My numbers may not be correct. So if there was a claim that Forrest capital, as a debtor in possession, had against Hitachi by reason of Hitachi taking money that belonged to Forrest capital, that was a claim that was never asserted, but that claim has nothing to do with co-fund. So what's really interesting is, I mean, you said there's too many ifs, and there probably are, but if Forrest would have asserted that claim, we would have a very, very, very different analysis for whether it belonged in the bankruptcy court or not. But what you're saying is, we can't take something where they never asserted a claim for the estate and say, because they might have had a claim but didn't assert one, we have to move this into the exclusive jurisdiction. That's just too much in your view. I think so, Judge, because we just don't know, and it changes the whole scenario of what it's like I would have, could have. You know, there was never a claim made. One other thing, or a couple of other things, if I may. Hitachi filed a trial brief in this case, as did co-fund, and it was interesting. It was filed, there was not a word in that trial brief. It was after the pretrial, the pretrial order of October 19, 2020. They filed a trial brief on November 6, 2020. Not a word about Dan Cohn or his alleged lack of qualification in that trial brief. And there was not a word about federal rule of evidence 702, 703, or 705. I don't know that there's anything more that your honors need, and I'll respectfully submit. Thank you. Mr. Insula, when you're ready. I will be briefer than five minutes unless your honors have any more questions. I just wanted to raise a couple of points that Mr. Zucker made both himself and in response to questions from the court. Mr. Zucker said just now, and I think in a supplemental brief from earlier this week, that the only basis that Hitachi ever raised about Mr. Cohn was under Rule 26. It's just not true. It was where 702 was raised in the pretrial order. 702 was raised in our findings of fact and conclusions of law. Certainly the concepts of 702 were raised in the examination of Mr. Cohn. So I think that that was in the case. The fact that it wasn't in the trial brief, the trial brief was a document to talk about legal issues. This was a virtual bench trial. I think the parties were even told that certain motions or evidentiary issues would be taken by the judge and considered and then decided after, as often happens in bench trials. That's what happened here. We put in a pretrial order. We put in trial briefs. We did a virtual bench trial. We put in the findings of fact and conclusions of law, which clearly raised the 702. And Daubert was briefed there as well. As far as Mr. Cohn, I talked about a blended witness. He was a blended witness where he gave both percipient and expert testimony. He was an employee and I guess a member of COFUN, one of the managing members. But his testimony did skew into what we have called improper opinion testimony. He was looking at documents. Mr. Zucker just raised it again. Documents from Forrest, documents from Mitachi did not have as he was a member of COFUN. He got them after the fact and then he went through what could only be characterized as a quasi-expert opinion analysis to create demonstratives and explain why he thought his company should get money from my client. And just very briefly, the last point I wanted to raise is on whether Forrest did or did not raise issues about the sweeping of the blocked account and then the blocked account basically being released back to what became the estate. Perhaps we don't know what Forrest would or would not have done, but part of our point from the very beginning of the case was that this all should have been put into the bankruptcy. There was a lot of discussion in the bankruptcy case about different pots of Forrest's money. We think this dispute should have gone into one of those pots. It was better to be decided in the bankruptcy case by the bankruptcy judge or through what turned into a settlement in the bankruptcy case. Thank you.